## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, John Q. DiLucente, being duly sworn, depose and state the following:

### Introduction and Agent Background

1.  I am a Supervisory Special Agent of the Internal Revenue Service, Criminal Investigation (IRS-CI), in Pittsburgh, Pennsylvania and have been employed in this capacity since June 2012. Prior to being a Supervisory Special Agent, I was employed as a Special Agent since January 1992. In my capacity as both a Special Agent and Supervisory Special Agent, I have participated in numerous investigations involving money laundering, currency structuring, tax evasion, and narcotics trafficking. During these investigations, I have assessed the criminal prosecution potential of a range of individuals and businesses based upon varying degrees of information. Through the application of a variety of investigative techniques, I determine if there is sufficient evidence to warrant a prosecution recommendation.

2.  As Special Agent Kevin Petrulak's supervisor, I have reviewed his entire case file and met with him to discuss the findings of this investigation. Based upon these reviews I have determined that the information contained in this affidavit is accurate. This affidavit is based on the personal knowledge of Special Agent Kevin Petrulak and on information obtained from other sources, including: a) statements made or reported by various witnesses with knowledge of relevant facts; b) Special Agent Petrulak's review of public available information relating to the defendants; and c) Special Agent Petrulak's review of business records, bank records and other documents and evidence obtained through Court orders, subpoenas and other sources. Because this affidavit is submitted for the limited purpose of establishing probable cause, the facts and opinions set forth herein are not meant to be inclusive of all information gathered with regard to the subjects identified herein or the investigation in general; rather, these facts are meant to provide information sufficient for the purpose of the affidavit as set forth herein.

3.  I submit that on the basis of facts set forth in this affidavit, there is probable cause to believe that in violation of Title 18, United States Code, Section 1956(h), Jared Weinberg did knowingly, intentionally, and unlawfully conspire and agree with others known and unknown to the investigation to conduct financial transactions which he believed involved the proceeds of a specified unlawful activity, namely narcotics trafficking, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of property that was the proceeds of specified unlawful activity, contrary to Title 18, United States Code, Section 1956 (a)(1)(B)(i).

### Investigation Background

4.  In April of 2008, members of the DEA Pittsburgh District Office Task Force Group 1 began investigating Robert Russell Spence, Jr. and his Drug Trafficking Organization (DTO). Shortly after in September of 2008, IRS-CI joined with DEA in the investigation of the

1

Spence DTO. The investigation has revealed that since in or around 2000 Spence and other members related to the Spence DTO were involved in both an illegal cocaine distribution conspiracy, as well as a money laundering conspiracy. The investigation has determined that the Spence DTO was responsible for obtaining thousands of kilograms of cocaine from sources of supply in California, which was distributed in areas including the Pittsburgh, Pennsylvania area, resulting in the generation of millions of dollars.

5.　　　　　The investigation revealed that one of the California sources of supply for the Spence DTO was Damon Lewis Collins Sr. Collins would often arrange for cocaine to be delivered to a member of the Spence DTO in either Baltimore, Maryland or Chicago, Illinois. Collins would expect payment for the cocaine within a few days of it being delivered to the Spence DTO. Spence would commonly arrange for a member of the Spence DTO to make payments directly to Collins or one of his associates in Baltimore, Maryland.

6.　　　　　Throughout this investigation your affiant has learned that Collins utilized an elaborate scheme to launder more than $2,000,000.00 of the proceeds from his cocaine enterprise. Collins laundered the majority of these proceeds by structuring cash deposits into his own bank accounts and the bank accounts of at least 13 other individuals, including Jared Weinberg, in order to conceal the source, nature and ownership of the funds, as well as to evade the filing of Currency Transaction Reports (CTRs), for cash transactions exceeding $10,000.

7.　　　　　The investigation has determined that Collins orchestrated at least 305 cash deposits totaling more than $1,800,000 into 29 different bank accounts. Many of these cash deposits were made at branches located in or around the Baltimore, Maryland; Chicago, Illinois; and New York, New York areas at the same time that Collins was known to have been traveling in those areas. Additionally, the investigation has been able to determine that Howard Weinberg; Jared Weinberg's father; purchased cashier's checks made payable to Collins that totaled more than $150,000, and cash mortgage payments in excess of $67,000.00 were made on homes owned by Collins.

8.　　　　　The investigation revealed that Collins had other individuals, including Howard and Jared Weinberg, rent apartments in the Baltimore, Maryland area that Collins used during his frequent travels to Baltimore to conduct the business of his cocaine enterprise. The following is a summary of the apartments rented for Collins in the Baltimore area from January 2006 through June 2010:

>　(a)　10360 Swift Stream Place, #404, Columbia, Maryland 21044: The investigation identified Tosha Asker, a girlfriend of Collins, as a money launderer for Collins. The investigation divulged that Asker, a resident of California, utilized funds that she received from Collins to rent the above apartment from January 02, 2006 through August 11, 2006.
>
>　(b)　10360 Swift Stream Place, #309, Columbia, Maryland 21044: The investigation divulged that Asker utilized funds that she received from Collins to

rent the above apartment from August 12, 2006 through September 2, 2007.

(c)     9075-S Saracen Drive, Pikesville, Maryland 21208: The investigation divulged that Howard Weinberg rented the above apartment from July 15, 2007 through June 30, 2009. Weinberg was known to be residing at 1513 Rising Ridge Road, Mt. Airy, Maryland at this time.

(d)     6251 Greenfield Road, #404, Elkridge, Maryland 21075: The investigation divulged that Jared Weinberg rented the above apartment from July 29, 2009 through May 04, 2010. As detailed below, this apartment has been identified as the location where individuals coming from the Pittsburgh, Pennsylvania area met individuals, including Jared Weinberg and/or Collins, to deliver large amounts of United States currency on behalf of Spence. Although both Howard and Jared Weinberg initially applied to rent the apartment, Howard Weinberg was denied due to a prior bankruptcy filing. The investigation has divulged that Jared Weinberg utilized cash deposits that he received from Collins to make the rent payments for the apartment.

(e)     2 Pellinore Court, Pikesville, Maryland 21208: The investigation divulged that Howard Weinberg rented the above apartment, from May 8, 2010 through July 13, 2010, in the name of his business, Emergence Technology Consultants, LLC. The timing of Howard Weinberg's lease of this apartment coincides with Jared Weinberg ending his lease of apartment #404 at 6251 Greenfield Road. Although Howard Weinberg signed a year lease for the above apartment, he requested permission to be released from the lease on July 13, 2010, which was less than a month after Collins' indictment pursuant this investigation. A civilian at the apartment complex informed your affiant that he did not think Weinberg actually resided in the apartment because he recalled an instance where he observed a black male on the couch in the apartment. Howard and Jared Weinberg are white males and Collins is a black male.

9.      On June 15, 2010, a grand jury in the Western District of Pennsylvania indicted Collins and others with conspiracy to possess with intent to distribute and to distribute cocaine, attempt to possess with the intent to distribute and to distribute cocaine, and possession with the intent to distribute and distribution of cocaine, in violation of 21, U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.

10.     On March 28, 2012, a grand jury in the Western District of Pennsylvania indicted Spence with conspiracy to possess with intent to distribute and to distribute cocaine, attempt to possess with the intent to distribute and to distribute cocaine, and possession with the intent to distribute and distribution of cocaine, in violation of 21, U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. In addition, Spence and Collins were also indicted with conspiracy to launder the proceeds of their DTOs, in violation of 18, U.S.C. §§ 1956(h).

11. On June 12, 2012, a grand jury in the Western District of Pennsylvania indicted Howard Weinberg, Tosha Asker, and others with conspiracy to launder the proceeds of the Collins DTO, in violation of 18, U.S.C. §§ 1956(h).

**Probable Cause in Re: Jared Weinberg**

12. Kristen Sullivan, the girlfriend of Jared Weinberg, stated that Jared Weinberg lived with Collins in the San Francisco Bay area for approximately five (5) months in 2009, while he was trying to find a job in the California area. A debit analysis of Jared Weinberg Bank of America Account No. XXXXXXXX8360 revealed that from on or about April 06, 2009 through July 21, 2009, Weinberg utilized his debit card at locations in and around the Brentwood, California area. It is known by your affiant that Collins was residing in Brentwood, California at that time. Beginning on July 21, 2009, debit card activity shows Weinberg traveling east across the United States and arriving back home in Columbia, MD on or around July 27, 2009.

13. On or about July 27, 2009, while applying to rent an apartment, Jared Weinberg provided Penniman Park Apartments with a letter from EDI Business Group Ltd, a business entity associated with his father, Howard Weinberg, facially identifying Jared Weinberg as a full-time employee of EDI Business Group Ltd earning an annual salary of $55,000.

14. A financial investigation of Weinberg has established that Jared Weinberg actually earned less than $6,500 per year in 2009 and 2010 while being employed as a lifeguard at the Life Time Fitness Club (LTF Club) in Elk Ridge, MD. [1]

15. On or about July 29, 2009, Jared Weinberg executed a lease agreement with Elkridge Town Center d/b/a Penniman Park Apartments to rent an apartment located at 6261 Green Field Road, Apt 404, Elkridge, Maryland. The lease agreement shows the rent on the apartment to be $1,720.00 per month plus a $75.00 monthly garage fee.

16. A confidential source ("CS1") identified 6261 Green Field Road, Elk Ridge, Maryland as the apartment building where he/she met with "Dane" to deliver large amounts of United States currency to him on behalf of Spence. Your affiant knows the apartment building to be located in the Penniman Park Apartments complex. CS1 identified Damon Collins as the person he/she knows as "Dane". CS1 knows Collins as a cocaine distributor from the Oakland, California area. CS1 stated that he/she has delivered large amounts of United States currency on Spence's behalf to Collins in Maryland on several occasions in late 2009 and 2010. CS1 stated that on at least one occasion he delivered currency to Collins at the Mall in Columbia, a strip mall in Columbia, Maryland. CS1 stated that Collins drove a black 2-door Infinity coupe to their meeting at the Mall in Columbia. Your affiant knows that Jared Weinberg owned a black 2-door

---

[1] The LTF Club where Jared Weinberg was employed as a lifeguard is approximately 7.5 miles from the Penniman Park Apartment complex. Records received from LTF Club divulged that Damon Collins was a member there from approximately February 12, 2006 through May 31, 2010 during which time he visited the gym on at least 73 occasions.

4

2008 Infinity G37 coupe during 2009 and 2010.

17. CS2 identified Jared Weinberg as the individual to whom he/she delivered hundreds of thousands of dollars of drug proceeds on behalf of Spence during the 2009 through 2010 timeframe. CS2 stated that Spence directed him/her to deliver a large black duffel bag containing US Currency to "Dame's nephew", referring to Damon Collins' "nephew". While reviewing a photo array of dozens of individuals, CS2 identified a photograph of Jared Weinberg as the individual he/she knows to be "Dame's nephew". CS2 stated that Spence programmed the GPS unit for him/her to follow to the Mall in Columbia where he/she was to deliver the currency to Weinberg. Your affiant knows the Mall in Columbia to be the same location where CS1 delivered currency to Collins on at least one occasion. After meeting Weinberg at the Mall in Columbia, CS2 followed Weinberg to his apartment where they both counted the currency. Agents took CS2 to the vicinity of the Penniman Park Apartments. Once nearing the apartment complex, CS2 directed the agents to 6261 Green Field Road as the location of Weinberg's apartment. Once inside the apartment building, CS2 quickly directed the agents to apartment #404 as the apartment he/she knew to be Weinberg's apartment. CS2 recalled that the kitchen in Weinberg's apartment was located just inside the entry door on the left and that a bathroom was located close in proximity to the kitchen. The agents later corroborated CS2's description of the layout of Weinberg's apartment through a floor plan that a representative of Penniman Park Apartments provided as a "mirrored image" of apartment #404. CS1 and 2 have provided information that is against their own penal interest in an effort to lessen their own sentences on criminal charges.

18. From on or about July 29, 2009 through May 03, 2010, nine (9) checks were drawn on Jared Weinberg Bank of America Account, No. XXXXXXXX8360, made payable to Penniman Park Apartments, totaling $14,900.72. Of these nine (9) checks payable to Penniman Park Apartments, Check Number 124, dated August 31, 2009, was noted in the memo line as "Rent APT 404".

19. A review of Bank of America records and travel records received from various sources indicate that cash deposits from Damon Collins were the predominant source of funds used to fund the checks payable to Penniman Park Apartments from Jared Weinberg Bank of America Account, No. XXXXXXXX8360: [2]

>   (a) A $1,200.00 cash deposit on or about July 29, 2009 was utilized to fund Check Number 131, dated July 29, 2009 to Penniman Park for $1,100.00. Prior to the cash deposit, the account had a balance of $17.34. The deposit was conducted at the Bank of America Main & Ridgeville Branch, located in Mt. Airy, Maryland. A review of travel records revealed that Collins was in the Baltimore area from approximately July 28, 2009 through July 31, 2009.

---

[2] The investigation has not disclosed a November 2009 rent payment from Weinberg to Penniman Park. However, on November 02, 2009, Collins made two (2) external wire transfers from Bank of America Account, No XXXXXX3543, to Weinberg for $800.00 and $900.00. Although not yet confirmed by the investigation, it is believed that the $1,700.00 would have been utilized by Weinberg to pay the November rent payment.

(b) A $1,700.00 cash deposit on or about September 1, 2009 was utilized to fund Check Number 124, dated August 31, 2009 to Penniman Park for $1,595.00. Prior to the cash deposit, the account had a balance of $155.59. The deposit was conducted at the Bank of America 940 N. Michigan Ave Branch, located in Chicago, Illinois. A review of travel records revealed that Collins was in the Chicago area from approximately August 27, 2009 through September 01, 2009. A review of Damon Collins Bank of America Account #XXXXXX3543 revealed that an $8,000.00 cash deposit into the account was also conducted at the Bank of America 940 N. Michigan Ave Branch on September 01, 2009. A comparison of the two (2) deposit tickets shows that the deposits were processed approximately 2 minutes apart, indicating that the transactions were conducted by the same individual.

(c) A $1,700.00 cash deposit on or about September 30, 2009 was utilized to fund Check Number 134, dated October 01, 2009 to Penniman Park for $1,595.00. Prior to the cash deposit, the account had a balance of $168.94. The deposit was conducted at the Bank of America Dobbin Station Branch, located in Columbia, Maryland, near Baltimore. A review of travel records revealed that Collins was in the Baltimore area from approximately September 28, 2009 through September 30, 2009.

(d) A $1,800.00 cash deposit on or about December 01, 2009 and a $600.00 online bank transfer from Damon Collins Bank of America Account #XXXXXX3543 were utilized to fund Check Number 136, dated December 01, 2009, to Penniman Park for $1,795.00. Prior to the cash deposit, the account had a balance of $63.89. The deposit was conducted at the Bank of America Slatten Ranch Branch, located in Brentwood, California. A review of Damon Collins Bank of America Account #XXXXXX3543 revealed that a $6,000.00 cash deposit into the account was also conducted at the Bank of America Slatten Ranch Branch on December 01, 2009. A comparison of the two (2) deposit tickets shows that the deposits were processed by the same teller approximately 2 minutes apart, indicating that the transactions were conducted by the same individual. It is known to your affiant that Collins was residing in the Brentwood, California area at the time of the deposits.

(e) A $2,000.00 cash deposit on or about January 06, 2010 and a $1,000.00 cash deposit on or about January 06, 2010 were utilized to fund Check Number 139, dated January 06, 2010, to Penniman Park for $1,804.74. Prior to the cash deposits, the account had a balance of $29.47. The $2,000.00 deposit was conducted at the Bank of America Waterloo Branch, located in Jessup, Maryland and the $1,000.00 deposit was conducted at the Bank of America Main & Ridgeville Branch, located in Mt. Airy, Maryland. Jessup and Mt. Airy are in the Baltimore area. A comparison of the deposit tickets indicate that the deposits were

6

made approximately 23 minutes apart. A review of travel records revealed that Collins was in the Baltimore area from approximately December 31, 2009 through January 12, 2010.

(f)  A $2,000.00 cash deposit on or about February 04, 2010 and a $1,900.00 cash deposit on or about February 8, 2010 were utilized to fund Check Number 140, dated February 01, 2010, to Penniman Park for $1,803.92. Prior to the cash deposits, the account had a negative balance of ($368.48).

(g)  A $2,000.00 cash deposit on or about March 03, 2010 was utilized to fund Check Number 142, dated March 03, 2010, to Penniman Park for $1,803.29. Prior to the cash deposit, the account had a balance of $401.91.

(h)  A $2,000.00 cash deposit on or about April 5, 2010 was utilized to fund Check Number 143, dated April 03, 2010, to Penniman Park for $1,803.77. Prior to the cash deposit, the account had a balance of $1,700.98.

(i)  A $1,600.00 cash deposit on or about May 03, 2010 was utilized to fund Check Number 144, dated May 03, 2010, to Penniman Park for $1,600.00. Prior to the cash deposit, the account had a balance of $55.05. The deposit was conducted at the Bank of America Thunder Hill Branch, located in Columbia, Maryland, near Baltimore. A review of travel records revealed that Collins was in the Baltimore area from approximately April 26, 2010 through May 13, 2010.

20.  The investigation obtained two (2) emails sent from Howard Weinberg to Kay McCann, Jared Weinberg's mother, regarding Jared Weinberg. One of the emails, dated January 21, 2010, advises that "I am telling Damon he is to stop helping him and he must move out of the apt. He will no longer play this game of living without paying rent." The other email, dated April 28, 2010, advises that "Damon has been more than gracious in providing him free space to live in and he took advantage of this by having Kristin move in. Damon is now very upset and last night told them they had to go somewhere else." The investigation has identified "Kristin" as Kristen Sullivan, Jared Weinberg's girlfriend.

21.  Kristen Sullivan stated that apartment #404 at the Penniman Park Apartments was a 2-bedroom apartment rented by Jared Weinberg. Although Sullivan considered the apartment to be Jared's, she knew that Collins stayed there on occasion and assisted Jared with paying the expenses related to the apartment. Sullivan stated that around April 2010 she moved from California to Maryland to live with Jared. Sullivan advised that since the lease on apartment #404 was ending soon, she and Jared decided to downgrade to a more affordable smaller one-bedroom apartment at the Penniman Park Apartments. Sullivan stated that "we wanted to give him (meaning Damon) his space. We wanted our own space, too, because he was, you know, staying there, visiting." According to Sullivan, she and Jared split the expenses associated with renting the new apartment at Penniman Park.

22.	On or about May 03, 2010, Jared Weinberg executed a lease agreement with Elkridge Town Center d/b/a Penniman Park Apartments to rent an apartment located at 6261 Green Field Road, Apt 103, Elkridge, Maryland. The lease agreement shows the rent on the apartment to be $1,450.00 per month plus a $60.00 monthly garage fee.

John Q. DiLucente
Internal Revenue Service, CI

Subscribed and sworn to before me
the ___6th___ day of May, 2013.

United States Magistrate Judge